# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 5, 2008 Session

## KEVIN LAWRENCE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-12786    Paula Skahan, Judge**

**No. W2007-02021-CCA-R3-PC - Filed April 17, 2009**

The petitioner, Kevin Lawrence, was convicted of felony murder and was sentenced to life with the possibility of parole. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel were ineffective. The post-conviction court found that the petitioner's counsel were not ineffective and denied the petition. On appeal, the petitioner challenges the court's ruling. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, Kevin Lawrence.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The petitioner was originally indicted for the premeditated first degree murder and the felony murder of the victim, Rodney Foster. The proof at trial revealed that on the evening of December 28, 1998, the victim; his mother, Willie Foster; his girlfriend, Tiffany Butts; his sister, Kimberly Foster; Kimberly Foster's two children; and the victim's friend, Marcus Lee, were at Willie Foster's apartment in the Woodale Condominum complex. Around 8:00 p.m., two men entered the apartment. One of the men, later identified as the petitioner, took the victim into the kitchen. The second man took the other individuals into a bedroom and held them at gunpoint. While the

petitioner and the victim were in the kitchen, the victim was shot; however, none of the witnesses saw the shooting. After the shooting, the perpetrators ran out of the apartment.

As the petitioner was running away, he was chased by police. Despite the cold weather, the petitioner discarded his black coat while he was running; notably, a black coat was one of the identifying characteristics of one of the perpetrators. When the petitioner was apprehended, he had duct tape on his fingertips. However, when the petitioner was removed from the police squad car, the duct tape was no longer on the petitioner's fingers and was instead stuffed in the crack of the seat. Additionally, police found a revolver and a mask along the petitioner's flight path. Testing later revealed that the revolver was the murder weapon. Police conducted a gunshot residue test upon the petitioner, and the test came back positive.

Tesean Brown testified that the petitioner requested that he relate a fabricated story to police to explain the gunshot residue. The petitioner's mother, Sherlie Lawrence, testified that the petitioner confessed to her his involvement in the crime. She asserted that she was testifying against her son in compliance with visions and instructions she had received from God. State v. Kevin L. Lawrence, No. W2001-02638-CCA-R3-CD, 2003 WL 22318461, at **1-7 (Tenn. Crim. App. at Jackson, Oct. 9, 2003), aff'd by State v. Lawrence, 154 S.W.3d 71 (Tenn. 2005). Based upon the foregoing proof, the petitioner was convicted of murder committed during the commission of a robbery, also known as felony murder, and of second degree murder as a lesser-included offense of premeditated first degree murder. The second degree murder conviction was merged into the felony murder conviction, and the petitioner was sentenced to life in prison with the possibility of parole. Id. at *7.

Subsequently, the petitioner filed a petition for post-conviction relief, making numerous allegations that his trial counsel were ineffective. Specifically, the petitioner complained regarding trial counsel's failure to object to references to the religious beliefs of the prosecutor and the petitioner's mother during the State's closing argument.

At the post-conviction hearing, the petitioner testified that his counsel were retained; one counsel served as primary counsel and the other was co-counsel. He felt that his trial counsel could have done a better job and been more involved in his case. The petitioner said that his trial counsel met with him a few times, but they never told him of any progress being made on his case. The petitioner said that an investigator worked on his case, but the investigator was not called as a witness at trial.

The petitioner complained that the witnesses at trial were able to identify him only because police let the witnesses see him after he was apprehended. The petitioner said that witness Tiffany Butts was one of the individuals who identified the petitioner as one of the perpetrators. During Butts' trial testimony, she said that everyone in the neighborhood knew "they" did it. Trial counsel objected to this testimony and requested a mistrial. The trial court denied the request for mistrial and instead gave the jury a curative instruction.

The petitioner acknowledged that trial counsel cross-examined the witnesses regarding the petitioner's identity as the perpetrator. However, the petitioner contended that trial counsel should have been more thorough in their cross-examination.

The petitioner said that his mother, Sherlie Lawrence,[1] testified for the prosecution that the petitioner had confessed to her his involvement in the murder. The petitioner stated that he had not told Lawrence that he had committed the murder; he had only explained to her the reason for his arrest. The petitioner said his wife was present during the conversation and testified at trial that Lawrence was confused about the conversation. The petitioner said that Lawrence believed that he was called to have a "prison ministry." He believed that without Lawrence's testimony, he "wouldn't have ended up with a life sentence."

The petitioner stated that trial counsel should have attacked Lawrence regarding her trial testimony. However, at the time, trial counsel explained to him that it would not be a good idea to attack her while she was emotional on the stand.

The petitioner said that during the State's closing argument, the prosecutor told the jury that she could not quote scripture like Lawrence and "basically ma[de] my mother out to be some sort of a prophet. Like what she says has got to be the truth because it's [my] mother." The petitioner maintained that trial counsel should have objected to the State's comments, but "they just let it go."

The petitioner's lead trial counsel testified at the post-conviction hearing that he was a certified criminal trial specialist who had been practicing for twenty-five years.[2] Trial counsel stated that after the petitioner was declared indigent, the defense hired an investigator. Trial counsel said that he could not recall how often he met with the petitioner, but he knew that he, co-counsel, or another member of his office met with the petitioner at every court date. Additionally, trial counsel said that the investigator also met with the petitioner. Trial counsel stated that he maintained contact with the petitioner and his family and believed that they had a good relationship.

Trial counsel recalled that prior to trial, he filed various motions to suppress. Trial counsel said that the defense he employed at trial was misidentification. Trial counsel recalled that the petitioner had another reason for being in the area. Additionally, the petitioner said that he was running when he was found by police because he was frightened after hearing a gunshot in the area. Trial counsel said that he cross-examined each eyewitness regarding the identification of the petitioner as a perpetrator, pointing out that each witness had originally been unable to identify him. Trial counsel said that in hindsight, he had no misgivings about the defense, noting that misidentification was the only viable defense.

Trial counsel said that he called the petitioner's wife to testify at trial in an attempt to

---

[1] This name is also spelled "Shirley Lawrence" in the record.

[2] The petitioner's co-counsel did not testify at the post-conviction hearing.

discredit Lawrence's testimony that the petitioner confessed to the crime. Trial counsel recalled that Lawrence had testified that God had spoken to her and had compelled her to testify against her son because it was the right thing to do. Trial counsel wanted the jury to see that Lawrence was "a very nice person but not a completely stable person" who had misunderstood her son's explanation of his arrest. Trial counsel believed approaching Lawrence in an understanding way was the best course of action. Trial counsel noted that Lawrence's testimony was problematic, especially because her testimony was consistent with that of Tesean Brown who had testified regarding the petitioner's desire for Brown to help him fabricate a plausible explanation for gunshot residue being on his hands.

Trial counsel said that by testifying "that she had had a vision from God," Lawrence had brought "spiritual matters into it from the start." Trial counsel had tried to emphasize to the jury that her testimony against the petitioner was based largely upon her "visions and talks with God." Therefore, trial counsel was unconcerned when the State referenced Lawrence's spirituality in closing argument. Trial counsel opined that the prosecutor's reference to her own church attendance "certainly brushe[d] up against" being improper. However, trial counsel made the decision not to object to the comments, explaining that the comments were "a passing reference" and that he "just didn't think it was worth objecting over." Moreover, trial counsel did not believe a curative instruction would have been beneficial.

At the conclusion of the hearing, the post-conviction court found that the petitioner's trial counsel were not ineffective and further found that the petitioner had not suffered any prejudice by counsel's alleged errors. On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

On appeal, the petitioner states:

> The religious arguments made by a prosecutor in her closing statement in [the petitioner's] trial for first degree murder . . . constituted prosecutorial misconduct. The prosecution sought to persuade the jury to convict [the petitioner] by urging the jury to consider the testimony of [the petitioner's] mother (who testified for the prosecution) as especially credible due to her devout Christian faith, and the Christian faith of the prosecutor. . . .

The petitioner argues that trial counsel's failure to object to this closing argument was deficient and prejudicial.

Generally, "argument of counsel is a valuable privilege that should not be unduly restricted." Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). However, "a prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial and must be pertinent to the issues in the case." State v. Banks, 271 S.W.3d 90, 131 (Tenn. 2008).

The contested portion of the State's closing argument is as follows:

> Sherlie Lawrence sat here and she cried. I've gone to church all my life and I can't quote scripture that way and wouldn't be

-5-

allowed to if I could. But the essence of what she said . . . is right is right, wrong is wrong, and I'm speaking for Ms. Lawrence, I had to do the right thing. That is what she said. And the right thing was being honest and truthful. And mixed with that very painful testimony she never once appealed to you to do anything else.

The post-conviction court found that during closing argument, "the prosecution was referring to the testimony of Petitioner's mother, which was substantially based upon her religion. . . . Because Petitioner's mother's testimony was substantially based upon her religion, the prosecution's use of her testimony did not rise to the level of prosecutorial misconduct." We agree. Our review of the trial transcript reveals that the petitioner's mother did not reference her religion during direct examination and only spoke of her religious beliefs after being directly questioned by the petitioner's trial counsel about the subject. At trial, the State objected to the line of questioning. Trial counsel explained to the trial court,

> [M]y position in asking this line of questioning is it is very possible that she is overly exuberant in her religion and is hearing voices. She has literally said that God has talked to her. . . . [T]he thing about it is in whether she thinks [God talked to her] and it appears on her credibility and it is very probative.

We conclude that, in light of trial counsel questioning the credibility of the petitioner's mother's testimony because of her religious fervor, the State was entitled to argue that the witness' religious beliefs did not negatively impact her credibility.

Further, the post-conviction court agreed with trial counsel's testimony that the prosecutor's reference to her own church attendance "brushe[d] up against" impropriety, but the post-conviction court found that the comment did not prejudice the petitioner. Our supreme court has previously cautioned that "references to biblical passages or religious law during a criminal trial are inappropriate." State v. Berry, 141 S.W.3d 549, 586 (Tenn. 2004). However, such references are not reversible error unless it is clearly established that the comments """affected the verdict to the prejudice of the defendant."" Id. (quoting State v. Middlebrooks, 995 S.W.2d 550, 559 (Tenn. 1999)). In determining the prejudicial effect of an improper comment during closing argument, we must consider:

> 1) the conduct complained of, viewed in light of the facts and circumstances of the case; 2) the curative measures undertaken by the court and the prosecution; 3) the intent of the prosecutor in making the improper arguments; 4) the cumulative effect of the improper conduct and any other errors in the record; and 5) the relative strength and weakness of the case.

Id.

In the instant case, the post-conviction court found that the evidence against the petitioner was strong; "[t]herefore, the likelihood that the prosecutor's solitary statement changed the outcome of the case is highly unlikely." We agree with the post-conviction court. The prosecutor's comments regarding her church attendance and the petitioner's mother's religious beliefs were only a brief portion of the State's closing arguments. Also, as we noted earlier, most of the comments were in direct response to trial counsel's questioning of the petitioner's mother. Additionally, as the post-conviction court found, the State's case against the petitioner was strong. Therefore, we, like the post-conviction court, conclude that the comments did not affect the verdict to the prejudice of the petitioner.

Moreover, we note that trial counsel testified that he made a tactical decision not to object to the prosecutor's comments because he believed the statements were not so inflammatory as to warrant objection. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Typically, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). In the instant case, trial counsel's decision not to object was a reasoned, strategic choice. Therefore, we conclude that trial counsel's failure to object to the State's closing argument did not render counsel's representation ineffective.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE